## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

VINCE CRESPIN,

      Plaintiff,

vs.                                      No. CIV 11-0913 JB/KBM

CITY OF ESPAÑOLA and JULIAN
GONZALES, individually and in his
official capacity,

      Defendants.

## <u>MEMORANDUM OPINION</u>[1]

**THIS MATTER** comes before the Court on Plaintiff Vince Crespin's Motion to Set Aside Order of Dismissal, filed August 27, 2012 (Doc. 14)("Motion"). The Court held a hearing on February 7, 2013. The primary issue is whether the Court should set aside the Order of Dismissal, filed February 29, 2012 (Doc. 12), and the Final Judgment, filed February 29, 2012 (Doc. 13), and grant Plaintiff Vince Crespin leave to file an amended complaint. Crespin's failure to file an amended complaint within the fourteen day time period the Court provided him in the Order of Dismissal was excusable neglect in the context of rule 60(b)(1); the Court, therefore, grants the Motion.

## <u>PROCEDURAL BACKGROUND</u>

On September 2, 2011, Crespin filed a Complaint for Damages for Personal Injuries ("Complaint") against Defendants, in the First Judicial District Court, Santa Fe County, New Mexico. <u>See</u> Complaint, filed September 2, 2012 (Doc. 1-1). The Defendants removed the case

---

[1] On March 29, 2013, the Court issued an Order in which it granted the Motion to Set Aside Order of Dismissal, filed on August 27, 2012 ( Doc. 14), stating: "The Court will . . . at a later date issue an opinion more fully detailing its rationale for this decision." Doc. 20 at 1 n.. This Memorandum Opinion is the promised opinion.

to federal court.  See Notice of Removal, filed October 12, 2011 (Doc. 1).  The Defendants also filed a Motion for More Definite Statement by Defendants City of Espanola and Julian Gonzales, filed October 12, 2011 (Doc. 3)("Motion for More Definite Statement"), and Memorandum Brief in Support of Motion for More Definite Statement by Defendants City of Espanola and Julian Gonzales, filed October 12, 2011 (Doc. 4).  The Defendants requested, pursuant to rule 12(a) of the Federal Rules of Civil Procedure, that the Court order Crespin to provide a more definite statement of his claims against them.  See Motion for More Definite Statement at 1.  The Court held a hearing on the Motion for More Definite Statement on February 6, 2012.  Although Crespin had notice of the hearing, see Notice of Motion Hearing, filed January 27, 2012 (Doc. 9), and the Court's Courtroom Deputy, K'Aun Wild, left a message for Crespin's attorney, Rudy Martin, informing him that he could appear telephonically, neither Crespin nor his attorney appeared for the hearing.  See Clerk's Minutes for proceedings held before District Judge James O. Browning: Motion Hearing held on 2/6/2012 at 1, filed February 6, 2012 (Doc. 10). The Court left the Meet-Me Conference line open for Mr. Martin if he attempted to appear telephonically during the course of the hearing.  See Transcript of Hearing at 1:23-2:5 (taken Feb. 6, 2012)(Court).[2]  Mr. Martin called the line later in the day, while the Court was hearing another case.  See Memorandum Opinion and Order at 3, filed February 10, 2012 (Doc. 11)("MOO").  After the hearing, the Court issued a MOO stating that

> the Motion for More Definite Statement by Defendants City of Espanola and Julian Gonzales, filed October 12, 2011 (Doc. 3) is granted. Plaintiff Vince Crespin must file an amended pleading within fourteen days or his Complaint for Money Damages for Personal Injuries, filed October 12, 2011 (Doc. 1-1), will be dismissed without prejudice.

---

[2] The Court's citations to the transcripts of the hearing refer to the court reporter's original, unedited versions.  Any final transcripts may contain slightly different page and/or line numbers.

MOO at 6.  Because Crespin did not file an amended complaint within fourteen days, on February 29, 2012, the Court dismissed the case without prejudice.  See Order of Dismissal, filed February 29, 2012 (Doc. 12).

On August 27, 2012, Crespin filed the Motion.  He argues that the Court should set aside the Order of Dismissal and Final Judgment for excusable neglect under rule 60(b)(1) of the Federal Rules of Civil Procedure.  Crespin states that his counsel, Mr. Martin, was experiencing health conditions that made him unable to file an amended complaint within the time frame that the Court provided: "Plaintiff's legal counsel was suffering with Post Traumatic Stress Disorder coupled with depression which precluded him from filing the Amended Complaint as ordered by this Court."  Motion at 1-2.  In Crespin's Memorandum of Law in Support of His Motion to Set Aside Order of Dismissal ("Memo."), he asserts that "Plaintiff's counsel was unable to properly advise Plaintiff or respond to the Court's order."  Memo. at 1 (Doc. 14-1).  Crespin states that "[i]t is important that this case be re-instated to allow Plaintiff to seek alternate legal counsel to move this case to formal resolution, if he so desires."  Motion at 2.  Crespin attaches an affidavit to the Motion from Mr. Martin's clinical psychologist, Dr. Edward Siegel, in which Dr. Siegel states that he started treating Mr. Martin in September, 2010, and "[i]n mid-February, 2012 . . . again commenced treating Mr. Martin for depression which appears to be recurring."  Affidavit of Edward (Ned) Siegel, Ph. D, ¶ 3, at 1 (dated May 30, 2012), filed August 27, 2012 (Doc. 14-2)("Siegel Aff.").  He had determined that Mr. Martin was "experiencing a form of Post Traumatic Stress Disorder as he had relatively recently experienced two life threatening situations."  Siegel Aff. ¶ 4, at 1.  Crespin asserts that the "Defendants will not be prejudiced because no significant amount of time has passed since the order to dismiss without prejudice

was filed," as "this motion is filed a mere six months after the date of the Order," and that "by filing the Order to Dismiss without prejudice, this Court made no decision on the merits and therefore reinstating this case returns the parties to the status quo."  Memo. at 4.

The Defendants filed Defendants' Response to Plaintiff's Motion to Set Aside Order of Dismissal ("Response").  <u>See</u> Response, filed September 10, 2012 (Doc. 15).  The Defendants state that the "Plaintiff's motion fails to enumerate why Plaintiff was unable to comply with any of the Court's deadlines at the relevant times" and that the "Plaintiff's general excuse that he was having emotional problems is simply not sufficient without putting it in a temporal context that would justify the pattern of failing to attend to the case at hand."  Response at 3.  The Defendants acknowledge that "[a]ttorney negligence or carelessness can constitute excusable neglect but only under limited circumstances," and argue that Crespin has not met his burden under rule 60 to show "why his attorney's alleged incapacity somehow prevented him from doing any of the steps necessary to advance his client's case over a period of several months."  Response at 2-4.  Defendants assert that willful misconduct does not support a finding of excusable neglect, and that "[a] single error may be excusable but a pattern of conduct suggesting delay and neglect is not."  Response at 3.  The Defendants argue there is also evidence of bad faith, because Mr. Martin participated in another pending case while allegedly ill.  <u>See</u> Response at 4.  The Defendants also ask that, if the case is reopened, the Court should award the Defendants attorney's fees under rule 41 of the Federal Rules of Civil Procedure.  <u>See</u> Response at 4-5 ("The purpose of Rule 41(d) is to prevent the unnecessary filing of multiple lawsuits.  Under the circumstances, it would be equitable to award Defendants the fees and costs they incurred in the prior action if Plaintiff is allowed to reopen the case and file an amended complaint.").  The Defendants cite to <u>Oteng v. Golden Star Res., Ltd.</u>, 615 F. Supp. 2d 1228 (D. Colo. 2009), and

Gainey v. Bd. of Ry. & S. S. Clerks, Freight Handlers, Exp. & Station Emp., 34 F.R.D. 8, 9 (E.D. Pa. 1963), to support their position that the Court should award fees in this case.

On September 17, 2012, Crespin filed a Reply to Defendants' Response to Plaintiff's Motion to Set Aside Order of Dismissal.  See (Doc. 16)("Reply").  In his Reply, Crespin argues that the Defendants do not identify which standards Crespin failed to meet, that the Defendants do not show that setting aside the judgment will prejudice them, and he further argues that the Defendants have not demonstrated that the "efficient administration of this Court would be adversely impacted, that the reason for the delay was within Plaintiff's control, or that Plaintiff's counsel acted in bad faith."  Reply at 2.  Crespin also provides additional information about Mr. Martin's medical condition, informing the Court that, in addition to suffering from Post-traumatic Stress Disorder ("PTSD"), "Plaintiff's counsel has been undergoing numerous lengthy and involved medical examinations to deal with other issues requiring him to undergo an MRI, MRA and complete brain scan to determine the causes of Plaintiff's counsel's headaches and problems with his right eye swelling and closing."  Reply at 3.

On February 7, 2013, the Court held a hearing.  See Transcript of Hearing (taken Feb. 7, 2013)("Tr.").  At the hearing, Mr. Martin provided an explanation to the Court for his neglect in filing an amended complaint:

> I had been involved in a fairly serious accident and as a result of that accident, I came down with chronic fatigue syndrome, and in 2011, in November of 2011 through pretty much the first half of 2012, I had a real bad bout, second bout, with PTSD, and that pretty much disabled me the whole time I was under the care of a psychologist in Santa Fe, Mr. -- Dr. Ned S[ie]g[e]l, and then shortly thereafter, I think by the time that I pulled out of the PTSD [bout] that I had, I had what -- the neurologists had been unable [to] confirm it was a mini stroke or whatever, but what happened was I had a real bad headache which caused a lot of pressuring on the third cranial nerve and I had to undergo a series of tests, brain scans, MRIs, MRAs, the works, and one of the things that happened, even back in February,

> Judge, when this case was dismissed, Ms. Anderman and I had been working on a
> companion case . . . and in that case, we had an appearance . . . .
>
> . . . .
>
> In this case, I had struggled to get an agreement that the case basically
> didn't have any federal causes of action . . . .  I was just [ ] depression was so bad,
> I really couldn't function much.  You know, it kind of -- I just couldn't do much.

Tr. at 2:6-3:4 (Martin); id. at 3:7-3:13.  Crespin argued that, although Mr. Martin was able to

participate in another case with Defendants' counsel, Ms. Virginia Anderman, he struggled

during that litigation and "got really sick at that point."  Tr. at 6:2-5 (Martin).  When the Court

asked why Crespin did not file his case in state court after the Order of Dismissal and Final

Judgment, which dismissed the case without prejudice, Crespin explained that the statute of

limitations for this matter may have already passed.  See Tr. at 4:7-5:16 (Martin).  Crespin also

stated that, although Mr. Martin will stay with him through the proceedings in federal court, he

hopes that the Court will remand the case to state court, at which point, Mr. Martin has

recommended, Crespin will retain other counsel because "of the health issues that [Mr. Martin]

continues having."  Tr. at 7:23-8:4 (Martin).  Crespin also argued that the Defendants have not

shown how granting the Motion would prejudice them.  See Tr. at 13:19-20 (Martin).

The Defendants asserted that "the original pleading that was filed was kind of vague" and

that it is difficult to tell what cause of action Crespin is asserting, which, the Defendants assert,

makes it difficult for them to discern what statute of limitations the Complaint implicates.  Tr. at

9:4-6 (Anderman).  The Defendants also argued that, according to Kaercher v. Trustees of Health

and Hosps. of Boston, 834 F.2d 31 (1st Cir. 1987), in the context of "excusable neglect," "a

single error may be excusable, but a pattern of conduct is not."  Tr. at 11:18-19 (Anderman).

The Defendant also argued that Advanced Optics Elec. Inc. v. Robins, 769 F. Supp. 2d 1285

(D.N.M. 2010)(Browning, J.), discussed that, "even if an attorney has experienced health problems that prevented him from doing certain things like attending hearings, the attorney must show how his health issues prevented him from submitting court filings or doing other ministerial tasks" and that Mr. Martin has failed to demonstrate that his health issues prevented him from filing an amended complaint, and, therefore, the Court should not set aside the Order of Dismissal and the Final Judgment.  See Tr. at 12:12-23 (Anderman).  The Defendants argue that, under an excusable neglect standard, a party asserting that its counsel was incapacitated must demonstrate that its counsel was incapacitated for the entire time "that is relevant."  Tr. at 10:5-7 (Anderman).

At the hearing, the Court stated that it is inclined to grant the Motion, because Crespin's failure to file an amended complaint was excusable neglect, resulting from Mr. Martin's health failures, and because it appears that granting the Motion will cause little prejudice to the Defendants.  See Tr. at 14:8-15:23 (Court).

## RELEVANT LAW REGARDING RULE 60(b)

Rule 60(b) allows a court to relieve a party from a final judgment for "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), "newly discovered evidence," Fed. R. Civ. P. 60(b)(2), "fraud . . . misrepresentation, or misconduct by an opposing party," Fed. R. Civ. P. 60(b)(3), or "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6).  "Rule 60(b) is an extraordinary procedure permitting the court that entered judgment to grant relief therefrom upon a showing of good cause within the rule."  Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d 1442, 1444 (10th Cir. 1983).  Rule 60(b) "is not a substitute for appeal, and must be considered with the need for finality of judgment."  Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d at 1444 (citing Brown v.

McCormick, 608 F.2d 410, 413 (10th Cir. 1979)).  The rule was designed to strike a "delicate balance" between respecting the finality of judgment and, at the same time, recognizing the court's principal interest of executing justice.   Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d at 1444.

Motions to reconsider based on mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, and fraud or misconduct by an opposing party, must be brought "within a reasonable time . . . no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).  When a party is

> partly to blame for the delay, relief must be sought within one year under subsection (1) and the party's neglect must be excusable. . . .  Thus, at least for purposes of Rule 60(b), "excusable neglect" is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence.

Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. 380, 394 (1993).  Motions made pursuant to rule 60(b)(1), 60(b)(2), and 60(b)(3) must be filed within one year of the entry of judgment or order, whereas motions made pursuant to rule 60(b)(6) must be filed only within a reasonable time. The Supreme Court of the United States explained in Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. that rule 60(b)(6) and rules 60(b)(1)-(3) are mutually exclusive, such that a motion which may be brought under rules 60(b)(1)-(3) but is untimely does not become timely when a party asserts that the motion is brought under rule 60(b)(6).  See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. 507 U.S. at 393 (holding that rule 60(b)'s "provisions are mutually exclusive, and thus a party who failed to take timely action due to 'excusable neglect' may not seek relief more than a year after the judgment by resorting to subsection (6)." (citing Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 & n.11 (1988))).  "[T]o to the extent it is applicable, clause (6) appears to offer a means of escape from the one-year limit that

-8-

applies to motions under clauses (1), (2), and (3)," so long as the movant demonstrates "extraordinary circumstances."  11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Practice & Procedure § 2864 at 490 (3d ed. 2012).

Rule 60(b)(6) provides that a court may relieve a party from final judgment, order, or proceeding for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  No time limit applies to rule 60(b)(6), save that the motion be made within a reasonable time.  See Fed. R. Civ. P. 60(c)(1).  Courts have found few narrowly defined situations that clearly present 'other reasons justifying relief.'"  Wright, Miller & Kane, supra, § 2864, at 491-92. The Supreme Court explained:

> To justify relief under subsection (6), a party must show "extraordinary circumstances" suggesting that the party is faultless in the delay. If a party is partly to blame for the delay, relief must be sought within one year under subsection (1) and the party's neglect must be excusable. In Klapprott, for example, the petitioner had been effectively prevented from taking a timely appeal of a judgment by incarceration, ill health, and other factors beyond his reasonable control. Four years after a default judgment had been entered against him, he sought to reopen the matter under Rule 60(b) and was permitted to do so.

Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. at 393 (citing Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863 n.11; Ackermann v. United States, 340 U.S. 193 (1950); Klapprott v. United States, 335 U.S. 601 (1949)).

## RELEVANT LAW REGARDING EXCUSABLE NEGLECT

To set aside a judgment as a matter of law under rule 60(b)(1), the court must find excusable neglect.

> "[A] party seeking to establish excusable neglect must plead and prove it.  The opposing party is entitled to present controverting evidence demonstrating the absence of excusable neglect. . . ."  The trial court must determine whether excusable neglect has in fact been established, resolving all doubts in favor of the party seeking relief.

Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d at 1445 (quoting Olson v. Stone (In re Stone), 588 F.2d 1316, 1319 (10th Cir. 1978)).  "The burden is upon the party moving to have the judgment set aside to plead and prove excusable neglect."  Pelican Prod. Corp. v. Marino, 893 F.2d 1143, 1146 (10th Cir. 1990)(emphasis in original).  The Tenth Circuit uses "three factors in determining whether a judgment may be set aside in accordance with rule 60(b)(1): (i) whether the moving party's culpable conduct caused the default; (ii) whether the moving party has a meritorious defense; and (iii) whether the nonmoving party will be prejudiced by setting aside the judgment."  Nieto v. Univ. of New Mexico, No. CIV 08-0465 JB WPL, 2010 WL 4929013, at *9 (D.N.M. Oct. 31, 2010)(Browning, J.)(citing United States v. Timers Preserve, 999 F.2d 452, 454 (10th Cir. 1993)).  In determining if a party's neglect is excusable, the question

> "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."  Relevant factors include "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."

Jennings v. Rivers, 394 F.3d 850, 856-57 (10th Cir. 2005)(quoting Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd., 507 U.S. at 395).  The Tenth Circuit has stated that the reason for delay is an important, if not the most important, factor in this analysis.  See Hamilton v. Water Whole Int'l Corp., 302 F. App'x 789, 798 (10th Cir. 2008)(unpublished)(citing United States v. Torres, 372 F.3d 1159, 1163 (10th Cir. 2004)(analyzing the excusable neglect standard in the context of Federal Rule of Appellate Procedure 4(b)(4), where the party filed an untimely notice of appeal)).

The relevant factors laid out by the Tenth Circuit in <u>Jennings v. Rivers</u> with regard to 60(b)(1), have been used to determine whether excusable neglect exists in a number of other contexts.  <u>See</u> <u>Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd.</u>, 507 U.S. at 395 (discussing application of the excusable neglect standard to Fed. R. Bankr. P.R. 9006(b)(1));  <u>Broitman v. Kirkland (In re Kirkland)</u>, 86 F.3d 172, 175 (10th Cir. 1996)(finding that "the Supreme Court relied upon use of the term 'excusable neglect' in a broad sense in Rules 6(b), 13(f), 60(b)(1), and 60(b)(6).  <u>Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd.</u>, 507 U.S. at 392-93," but that the <u>Pioneer</u> factors did not apply to the "good cause" standard under Rule 4(j)."  86 F.3d at 175); <u>City of Chanute, Kan. v. Williams Natural Gas Co.</u>, 31 F.3d 1041, 1046 (10th Cir. 1994)("Thus, we apply the <u>Pioneer</u> test for 'excusable neglect' under Fed. R. App. P. 4(a)(5)."); <u>United States v. Torres</u>, 372 F.3d 1159, 1162 (10th Cir. 2004)("We now likewise conclude that the Supreme Court's construction of 'excusable neglect' in <u>Pioneer</u> also applies to the term 'excusable neglect' as it is used in Federal Rule of Appellate Procedure 4(b)(4).").  Deliberate tactics do not create excusable neglect.  "'Excusable litigation mistakes are not those which were the result of a deliberate and counseled decision by the complaining party . . . . ;' rather, they are the 'kinds of mistakes that a party could not have protected against . . .'"  <u>Thompson v. THI of N.M. at Casa Arena</u>, No. CIV 05-1331 JB/LCS, 2008 WL 5999653, at *18 (D.N.M. 2008)(Browning, J.)(quoting <u>Yapp v. Excel Corp.</u>, 186 F.3d 1222 (10th Cir. 1999)).

The Court has previously applied the factors set forth in <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.</u> to find that another party demonstrated excusable neglect when its attorney failed to respond to a motion for summary judgment because its attorney mistakenly thought that the Court's vacating a scheduling order meant there was no deadline for filing responsive pleadings.  <u>See</u> <u>Estate of Anderson v. Denny's, Inc.</u>, No. CIV 12-0605 JB/GBW,

2013 WL 690809, at ** 13-14 (D.N.M. Feb. 7, 2013)(Browning, J.).  The Court noted that the attorney's failure to file a responsive pleading was not unintentional, as the attorneys' misunderstanding of local court rules caused him to think that he did not need to respond.  The Court also noted that the attorney was honest with his reason for not filing, as he did not make up an excuse of catastrophic circumstances precluding him from responding.  The Court recognized that granting the party leave to file a late response was "generous," and that the attorney's failure to respond was "barely excusable."  2013 WL 690809, at *14.  The Court also explained that it is bound by Tenth Circuit precedent requiring the Court to determine motions for summary judgment on their merits, rather than granting such motions for procedural defaults.  See 2013 WL 690809, at *14 (citing Reed v. Bennett, 312 F.3d 1190, 1196 (10th Cir. 2002)).  The Court also found that the prejudice to the party requesting summary judgment was little, as the only costs the party would incur are those it would also have incurred had the attorney timely responded.  See 2013 WL 690809, at **14-15.  In another case, the Court found that a party demonstrated excusable neglect when it requested leave to file a late response to a motion to compel.  See Skyline Potato, Co., Inc. v. Tan-O-On Mktg., Inc., No. CIV 10-0698 JB/RHS, 2012 WL 3150375 (D.N.M. July 28, 2012)(Browning, J.).  In Skyline Potato, Co., Inc. v. Tan-O-On Mktg., Inc., the Court noted that the danger of prejudice to the opposing party, Hi-Land Potato, was low, because it had the opportunity to respond to Tan-O-On's arguments at a hearing.  The Court also noted that the delay was not long, as Tan-O-On sought leave to file a response fifteen days after a response was due, and the Court was not required to reschedule its hearing on the motions to compel because of Tan-O-On's late response.  Tan-O-On provided a valid reason for its delay in responding, even though its ability to timely respond was in its control: Tan-O-On was trying to work out discovery disputes in a complex case involving multiple parties.  See

2012 WL 3150375, at *3.   On the other hand, in Scull v. Mgmt. & Training Corp., 2012 WL

1596962 (D.N.M. May 2, 2012)(Browning, J.), the Court did not grant a plaintiff's request for an

extension of time to name an expert witness against a defendant, when the plaintiff asserted that

he had waited to name an expert witness until a second defendant joined the case, because,

before the second defendant entered the case, a scheduling order was in effect and the plaintiff

should have known that he would need to name an expert witness against the defendant already

in the case.   See 2012 WL 1596962, at *8.   The Court determined that the plaintiff was seeking

"relief from his own disregard" for the deadline.   2012 WL 1596962, at *8.   "Despite his

knowledge that [Defendant] PNA had yet to enter the case, [Plaintiff] Scull chose to allow the

deadline to pass without naming expert witnesses against [Defendant] MTC."   2012 WL

1596962, at *8.   Regarding the defendant who entered the case at a later date, however, the Court

allowed the plaintiff an extension of time to name an expert witness, because it "was not

unreasonable for Scull to expect a new deadline to name expert witnesses upon PNA's entrance

into the case because he had not yet had the opportunity to engage in discovery against PNA as

he had against MTC."  2012 WL 1596962, at *9.   The Court also noted that not naming an expert

witness "is a high price to pay for missing a deadline that was arguably unrealistic when it was

set," as Scull could not have determined the need for an expert witness until after PNA entered

the case.   2012 WL 1596962, at *9.   In Stark-Romero v. Nat'l R.R. Passenger Co (AMTRAK),

275 F.R.D. 544 (D.N.M. 2011)(Browning, J.), the Court found that a lawyer had shown

excusable neglect when his reason for missing a scheduling deadline was that soon after his

son's wedding, his father-in-law developed a tumor in his chest, the lawyer arranged his father-

in-law's medical care, and only after the lawyer returned to his work did he realize that a

deadline passed.   See 275 F.R.D. at 549-50.   The Court noted that the lawyer could have avoided

missing the deadline had he not left his work until the last minute, just before his son's wedding, but found that the lawyer had demonstrated good faith and missed the deadline because of "life crises," and not his own inadvertence.  275 F.R.D. at 549-50.  In <u>West v. N.M. Taxation & Revenue Dept.</u>, No. CIV 09-0631 JB/CEG, 2010 WL 3834341 (D.N.M. July 29, 2010)(Browning, J.), the Court allowed a plaintiff extended time to file a response to a defendant's motion for summary judgment in part because the plaintiff's inability to respond was caused by the difficulty she experienced attempting to obtain depositions with certain defense witnesses, and thus was not her fault, and in part because cross-motions on summary judgment are particularly helpful for the Court:

> [C]ross-motions tend to narrow the factual issues that would proceed to trial and promote reasonable settlements.  In some cases, it allows the Court to determine that there are no genuine issues for trial and thereby avoid the expenses associated with trial.  The Court prefers to reach the merits of motions for summary judgment when possible.

2010 WL 3834341, at **4-5.  On the other hand, in <u>Liles v. Washington Tru Solutions, LLC</u>, No. CIV 06-854 JB/CEG, 2007 WL 2298440 (D.N.M. June 13, 2007)(Browning, J.), the Court denied a plaintiff's request for additional time to respond to a defendant's motion for summary judgment, when the only rationale the plaintiff provided was that its counsel's "family and medical emergencies" -- without further explanation -- precluded the plaintiff from timely responding.  2007 WL 2298440, at *2.

## RELEVANT LAW REGARDING ATTORNEY'S FEES

With regard to the award of attorney's fees and costs, the Tenth Circuit follows the "American Rule," under which parties to a lawsuit ordinarily pay their own attorney's fees. <u>Pound v. Airosol Co.</u>, 498 F.3d 1089, 1100 (10th Cir. 2007)(citing <u>Alyeska Pipeline Serv. Co. v. Wilderness Soc'y</u>, 421 U.S. 240 (1975)).  "There are several exceptions to this principle. Most

notably, there are certain statutory fee-shifting provisions that permit a court to order one party to pay the fees and costs of another." Pound v. Airosol Co., 498 F.3d at 1100 (citing Bennett v. Coors Brewing Co., 189 F.3d 1221, 1238 (10th Cir. 1999)).   Under the American Rule, each party generally pays its own attorney's fees, unless there is a contract or a statute specifying otherwise.   See Marx v. Gen. Revenue Corp., 668 F.3d 1174, 1179 (10th Cir. 2011); Mountain Highlands, LLC v. Hendricks, No. CIV 08-0239 JB/ACT, 2010 WL 1631856, at *3 (D.N.M. April 2, 2010)(Browning, J.).   Congress has legislated exceptions for prevailing plaintiffs in actions to enforce federal rights.   See, e.g., 42 U.S.C. § 1988(b); 29 U.S.C. § 216(b); 17 U.S.C. § 505; 28 U.S.C. § 3905(a).   Other statutes make an exception to the American Rule for suits brought in bad faith, brought for purposes of harassment, or known to be meritless.   See 28 U.S.C. § 1875(d)(2); 15 U.S.C. § 1693m(f).

## ANALYSIS

The Court will grant Crespin's Motion, because he has shown excusable neglect for failing to file an amended complaint within the time frame that the Court provided in the MOO. The Court concludes that Crespin's evidence that his counsel was suffering from serious health difficulties demonstrates excusable neglect, the motion was filed within rule 60(b)(1)'s one-year time limit, and the Defendants have not demonstrated that the Court setting aside the Order of Dismissal and Final Judgment, will prejudice them. Thus, pursuant to rule 60(b)(1), the Court will set aside the Order of Dismissal and the Final Judgment.   Additionally, the Court will not grant the Defendants' request for an award of fees, because they have not notified the Court of a relevant statutory authority or contract that requires Crespin to bear the Defendants' fees and costs in this matter.

Crespin's reason for not meeting the Court's previous deadline is that his attorney suffered from severe psychological difficulties in the time period when the Court required Crespin to file an amended complaint. Crespin presents evidence that Mr. Martin suffered from ill health during February of 2012, including an affidavit from Mr. Martin's clinical psychologist. See Siegel Aff. ¶¶ 4-7, at 1-2; Tr. at 2:12-4:5 (Martin)(explaining Mr. Martin's struggle in February, 2012, with chronic fatigue syndrome, PTSD, and depression; the series of brain scans he had undergone to determine whether he had suffered a minor stroke; and the care he received from Dr. Ned Siegel). Just as the attorney in Stark-Romero v. Nat'l R.R. Passenger Co. (AMTRAK) faced "an unfortunate string of circumstances," including illness in the family, 275 F.R.D. at 549-50, Crespin has shown that health problems during February of 2012, when the case was originally dismissed, see Order of Dismissal, caused Mr. Martin's negligence, and, thus, has demonstrated that excusable neglect kept him from filing an amended complaint. Mr. Martin's psychological troubles were not within his control. See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 407 U.S. at 395 (listing whether a party's reason for delay was within the party's control as a factor for a court to consider when the party seeks relief on the basis of its excusable neglect). Indeed, Dr. Seigel informs the Court that Mr. Martin "was experiencing a form of Post Traumatic Stress Disorder as he had relatively recently experienced two life threatening situations." Siegel Aff. ¶ 4, at 1. Experiencing two serious, life-threatening accidents is not a situation a person can control, and the Court has no reason to doubt Dr. Siegel's assessment of Mr. Martin's condition. See United States v. Andrews, 790 F.2d 803, 806 (10th Cir. 1986)(finding that a defendant suffering from serious illness and heavily medicated during the time in which he was required to appeal, and who was improperly denied aid of appointed counsel, demonstrated excusable neglect in not timely filing an appeal). Further,

Crespin has provided the Court with far more than a "naked assertion" that "family and medical emergencies" precluded Mr. Martin from filing an amended complaint.  Cf. Liles v. Washington Tru Solutions, LLC, 2007 WL 2298440 *2 (denying a motion for extension of time when a party's explanation for not filing earlier was only that "counsel's family and medical emergencies," -- without further explanation -- precluded the party from timely responding).  As the Court has previously explained, medical problems, suffered by an attorney or his close family, may amount to excusable neglect.  See Stark-Romero v. Nat'l R.R. Passenger Co (AMTRAK), 275 F.R.D. at 549-550; Liles v. Washington Tru Solutions, LLC, 2007 WL 2298440, at *2 ("It may well be that counsel's family and medical emergencies can constitute excusable neglect . . . .").  The Court concludes, therefore, that this factor weighs in favor of finding that Crespin's failure to timely file an amended complaint was caused by excusable neglect.

The Defendants argue that Crespin acted in bad faith, because his attorney was able to engage in another lawsuit around the same time he suffered from health problems.  Although Mr. Martin engaged in a telephonic scheduling conference on February 14, 2012, he began to be very sick during February of 2012, see Tr. at 6:2-5 (Martin), and his sickness is confirmed by the Siegel Aff., which indicates that Dr. Siegel began treating Mr. Martin for PTSD and recurring depression in mid-February 2012.  See Siegel Aff. ¶¶ 2-7, at 1-2.  Mr. Martin's illness and subsequent neglect to assist Crespin with filing an amended complaint does not amount to bad faith.  Psychological troubles may manifest themselves in varying degrees.  Ms. Anderman informs the Court that Mr. Martin "participated in a previously scheduled telephonic scheduling conference with Judge Molzen and approved a stipulated order of dismissal and remand" in a companion case, and, on this basis, asserts that Mr. Martin was, therefore, not unable to file an

amended complaint in Crespin's case.  Response at 4.  Mr. Martin, however, explains that he was struggling "to get an agreement that the case basically didn't have any federal causes of action" at the time that his depression worsened in early 2012.  Tr. at 3:7-3:13 (Martin).  It is likely that appearing at a telephonic scheduling conference and approving a stipulated order of dismissal and remand -- which denotes that all parties are in agreement -- was a less mentally and psychologically difficult task than persuading parties who are not in agreement that federal court is not the correct forum for Crespin's case.  The Court concludes, therefore, that, although Mr. Martin was able to do perform less contentious tasks in a related case around the time he failed to file an amended complaint in this case, Mr. Martin's less-arduous performance in another matter does not make his failure in Crespin's case bad faith.

The Defendants do not dispute that Mr. Martin was sick during the period of time he missed the Court's deadline.  The Defendants do not dispute that his illness could cause him to miss a deadline.  The Defendants also do not argue that a lawyer's medical condition could not constitute excusable neglect.  Instead, the Defendants' argument against the Motion is more narrow.  The Defendants argue that the

> Plaintiff's general excuse that he was having emotional problems is simply not sufficient without putting it in a temporal context that would justify the pattern of failing to attend to the case at hand. . . .  A single error may be excusable but a pattern of conduct suggesting delay and neglect is not.

Response at 3.  Crespin's neglect in not submitting an amended complaint or in filing this Motion earlier does not demonstrate a pattern of neglect, but rather demonstrates the severity of Mr. Martin's health difficulties.  This case is largely a single error.  That he did not file the Motion quicker does not say much about whether he committed negligence initially.  Crespin filed the Motion within the one-year time limit, and has shown excusable neglect arising from

Mr. Martin's pervasive sickness, which commenced in February, 2012.  The Court does not believe that Mr. Martin did not file an amended complaint in an attempt to manipulate the case, as his delay appears to have hindered, and not helped Crespin, and, therefore, there is no evidence before the Court that Mr. Martin made a deliberate, tactical litigation mistake.  Cf. Thompson v. THI of N.M. at Casa Arena, 2008 WL 5999653, at *12 (explaining that "'[e]xcusable litigation mistakes are not those which were the result of a deliberate and counseled decision by the complaining party . . . ,' but are those 'kinds of mistakes that a party could not have protected against such as counsel acting without authority'" (quoting Yapp v. Excel Corp., 186 F.3d at 1231)).  Additionally, the length of delay is not so extreme as to warrant denying the Motion.  See Pioneer Inv. Serv. Co. v. Brunswich Assocs. Ltd, 407 U.S. at 395 (listing the "length of delay and its potential impact on judicial proceedings," as a factor for a court to weigh when considering whether excusable neglect caused a delay).  Crespin filed the Motion approximately six months after the Court entered Final Judgment; rule 60 provides Crespin up to one year to request the Court to set aside the Order of Dismissal and Final Judgment.  See Fed. R. Civ. P. 60(b).  Six months is not an unreasonable time for a person to recover from psychological troubles and return to work.  Finally, in addition to demonstrating excusable neglect, the Court does not find that re-opening this case will prejudice the Defendants; the Defendants have not argued they will be prejudiced, and have shown no evidence that they will be prejudiced, and there appears to be no reason the Defendants would be prejudiced by setting aside the Order of Dismissal and Final Judgment.

Although the Defendants argue that Advanced Optics Elec. Inc. v. Robins controls the Motion, that case dealt with a rule 60(b)(6) analysis, which is a more stringent than the Court's analysis under rule 60(b)(1).  In Advanced Optics Elec. Inc. v. Robins, the Court determined

that, "[b]ecause more than one year has passed since the entry of the Default Judgment, and A. Robins does not contend the Default Judgment is void or that it has been satisfied, [s]ee Fed. R. Civ. P. 60(b)(4)-(5), A. Robins can succeed on his motion to vacate only under rule 60(b)(6)'s demanding standard."  769 F. Supp. 2d at 1310.  The Court need not consider whether Crespin has met the more demanding standard of 60(b)(6), because the Motion was filed within the one-year time limit and relies on excusable neglect as the rationale for setting aside the judgment, thus requiring the Court to apply rule 60(b)(1)'s less stringent standard of excusable neglect. Under a rule 60(b)(1) analysis, Crespin has met his burden of demonstrating excusable neglect.

The Court denies the Defendants' request for attorney fees.  The cases that the Defendants have cited to support their request for damages are Oteng v. Golden Star Res., Ltd., 615 F. Supp. 2d at 1228, and Gainey v. Bd. of Ry. & S. S. Clerks, Freight Handlers, Exp. & Station Emp., 34 F.R.D. at 9.  Neither case is on point.  Oteng v. Golden Star Res., Ltd. is distinguishable, because the plaintiff in that case voluntarily dismissed the first case under rule 41, whereas in this case, the Court issued the Order of Dismissal and Final Judgment, because Crespin failed to file an amended complaint within the stated time period, which involuntarily dismissed Crespin's case without prejudice.  See 615 F. Supp. 2d at 1240 (stating that "the decision whether to impose costs and attorneys' fees under Rule 41(d) is within the discretion of the trial court" (citing Meredith v. Stovall, No. 99–3350, 2000 WL 807355, at *1 (10th Cir. 2000)).  Rule 41(d) provides for the award of fees; the Defendants have not point to a statute that provides for fees to be awarded if the Court acts under rule 60.  Gainey v. Bd. of Ry. & S. S. Clerks, Freight Handlers, Exp. & Station Emp. is not binding authority on the Court, and furthermore, the case is factually distinguishable.  In Gainey v. Bd. of Ry. & S. S. Clerks, Freight Handlers, Exp. & Station Emp., the court granted the defendants' request for a stay until the

plaintiffs paid costs incurred in two previous actions that the court had dismissed.  In this case, the Court did not assess fees in the Order of Dismissal, or in the Final Judgment, and the Court is unaware of any previous matters in which Crespin owes fees, and therefore the court's analysis in Gainey v. Bd. of Ry. & S. S. Clerks, Freight Handlers, Exp. & Station Emp. does not apply in this situation. Because the Tenth Circuit follows the American Rule, under which parties to a lawsuit ordinarily pay their own attorney's fees, see Pound v. Airosol Co., 498 F.3d at 1100, because there is no contract in this case which would require Crespin to pay attorney's fees to the Defendants, because there is no statutory provision which would permit fee-shifting in this case, because the Court does not find that Crespin acted in bad faith, and because the Defendants have cited no authority on which the Court can soundly base an award for attorney's fees, the Court will deny the Defendants' request for attorney's fees.  An order of fees would be a raw exercise of judicial power.  Just because the Court could enter an award and try to do a little equity to even things up does not mean it should.

Crespin has demonstrated that Mr. Martin's health problems caused him to not file an amended complaint in February, 2012, and the Court concludes that Mr. Martin's health problems, as the cause of Crespin's failure to file an amended complaint, demonstrate that Crespin's failure was excusable neglect.  Thus, pursuant to rule 60(b)(1), the Court will grant the Motion.

**IT IS ORDERED** that Plaintiff's Motion to Set Aside Order of Dismissal, filed August 27, 2012 (Doc. 14), is granted, and the Defendants' request for fees is denied.  This case is reinstated on the Court's docket.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Rudy Martin
Espanola, New Mexico

     *Attorney for the Plaintiff*

Virginia Anderman
Miller Stratvert P.A.
Albuquerque, New Mexico

     *Attorneys for the Defendants*