IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**VINCE CRESPIN,**

       **Plaintiff,**

vs.                                  Case No.:   1-11-CV-00913 JOB/KBM

**CITY OF ESPANOLA et. al.,**

       **Defendants.**

## AMENDED COMPLAINT FOR MONEY DAMAGES
## FOR PERSONAL INJURIES[1]

COMES NOW Vince Crespin, the Plaintiff herein, represented by Attorney at Law Rudy Martin, and for this cause of action states:

1.    Plaintiff Vince Crespin is a resident of the City of Santa Fe, Santa Fe County, New Mexico.

2.    Defendant City of Espanola is a municipal corporation existing under the laws and fully within the boundaries of New Mexico and at all times relevant to herein was Plaintiff's employer.

3.    Based on information and belief, Defendant Julian Gonzales is a resident of Santa Fe, County of Santa Fe, New Mexico, and at all times relevant to herein was the Chief of Police for the City of Espanola, was a public employee as that term is defined in the New Mexico Tort Claims Act, NMSA 1978 §§ 41-4-3(F)(1) and (3).  At all times relevant to herein Chief Gonzales was the supervisor of Plaintiff.

4.     At all times relevant to herein, the Espanola City Police was under a contract with the Union which represented the police officers of the City of Espanola. As part of the contract between the police union and the City of Espanola, the Police Department was obligated to conduct an Internal Affairs Investigation against any police officer accused of having violated any departmental policy, regulation, or accused of any wrongdoing before taking any disciplinary action against the officer.

5.     On June 5, 2009, Plaintiff Vince Crespin received a letter from Veronica Albin, City Manager of the City of Espanola, regarding "Administrative Leave with Pay." The purpose of the letter was to "investigate allegations of possible embezzlement/fraud involving checks written to you."

6.     On June 10, 2009, Plaintiff Vince Crespin received a letter from Chief Julian Gonzales titled "Notice of Contemplated Action." Chief Gonzales cited specific incidents which he believed were just cause to terminate Plaintiff Crespin.

9.     The Notice of Contemplated Action alleges the following: "On multiple occasions, you have received City of Espanola checks drawn on City's payroll account for monies which were not owed to you either as pay or for equipment or uniform expenses or pursuant to an authorized purchase order. Your actions for cashing City of Espanola's checks issued to you by the Finance Department for monies which are not owed to you either as pay or for purchase order authorized expenses constitute theft, embezzlement or fraud of public monies."

10.    The acts of which Plaintiff Crespin was accused by Veronica Albin, City Manager, and Chief Julian Gonzales are criminal in nature.

11.    In a letter dated June 16, 2009, Plaintiff Crespin refuted the allegations raised by Chief Gonzales. At all times relevant to herein, Plaintiff Crespin maintained that the

funds deposited into his bank account via direct deposit were from a personal loan from Josie Lucero. In that same letter, Plaintiff Crespin requested that Chief Gonzales provide him with the evidence that Chief Gonzales would be using against Plaintiff Crespin in support of the termination.

12. On July 16, 2009, Plaintiff Crespin received a Letter of Termination from Chief Gonzales. In the letter, Chief Gonzales stated that Plaintiff was being terminated for receiving a paper check on May 15, 2009 and cashed on May 18, 2009, and for a direct deposit to Plaintiff's account on May 22, 2009.

13. In the Letter of Termination, Chief Gonzales also stated that additional overpayments occurred, but the amounts were much less, contending that the differences were related to changes made in withholdings.

14. Chief Gonzales stated in the Letter of Termination that a portion of the direct deposit went toward an automatic child support payment made on Plaintiff's behalf. The amount attributed to the child support payment is $251.30.

15. At all times relevant to herein, Chief Gonzales did not initiate an Internal Affairs Investigation against Plaintiff Crespin as required by the contract which the City of Espanola and the police union had entered into and which was standard protocol when a police officer is accused of any wrongdoing.

16. At all times relevant to herein, Chief Gonzales failed to conduct any type of investigation to determine whether the allegations raised against Plaintiff Crespin were true.

17. Chief Gonzales is, and was at that time, a highly experienced law enforcement officer having retired as a Special Agent with the Federal Bureau of Investigation. Chief Gonzales knew and understood the importance of not only conducting an Internal

Affairs Investigation, but of conducting an investigation to determine if any of the allegations against Plaintiff Crespin contained any truth and that thus discipline should be imposed.

18. During his employment with the Espanola Police Department, Plaintiff Crespin was a member of the police union and served as President and Vice President.

19. During the time that Plaintiff Crespin served as an official with the police union, the union issued two "No Confidence" votes regarding Chief Gonzales.

20. But for the fact that Defendant Gonzales received two "no confidence" votes while he served as Chief of Police with the City of Espanola, he would not have attacked Plaintiff Vince Crespin and fired him without conducting an investigation to determine the truth of the allegations against Plaintiff Crespin.

21. All of Chief Gonzales' acts against Plaintiff Crespin, including termination of employment, represent solely a personal vendetta against Plaintiff Crespin for the two votes of "No Confidence" which the police union issued against Chief Gonzales while Plaintiff Crespin served as an officer with the Union.

22. Plaintiff Crespin never had any monies deposited into his bank account for child support as indicated in Chief Gonzales' Letter of Termination.

23. During the entire time relevant to herein, Plaintiff Crespin maintained that the monies deposited into his bank account via direct deposit were personal monies belonging to Josie Lujan.

24. As a result of the termination from his employment, Plaintiff Crespin was required to file an appeal and go through a full hearing before a hearing officer with the City of Espanola.

25.     The personnel board hearing accorded to Plaintiff Crespin was biased as the hearing officer was found to have been a former classmate of the acting City Attorney Paula Maynes as well as well as a former co-employee at the New Mexico Attorney General's office. In spite of requests that the Hearing Officer remove herself for appearance of impropriety, she refused and found against Plaintiff Crespin, contrary to all of the testimony and evidence presented at the hearing.

26.     Up to the evening before the hearing, everyone, including Plaintiff Crespin, believed that the money that Plaintiff Crespin received via direct deposit was a personal loan from Josie Lujan. Not until the night before, as Lupita De Herrera prepared for her testimony did she discover that Josie Lujan had received her pay and that the money transferred to Plaintiff Crespin was City of Espanola money. Prior to this time, no one employed with the City of Espanola knew the true source of the funds.

27.     Once it was disclosed that the funds were in fact City monies, Plaintiff Crespin made arrangements to pay the money back, which arrangements the City accepted, and on March 2010 Plaintiff Crespin paid the City the entire amount transferred erroneously into his bank account.

28.     In spite of having been repaid in full for the monies which Plaintiff Crespin received believing that they were a loan from Josie Lujan, and also having direct knowledge that no formal investigation of any kind had been performed, the City of Espanola failed to rectify Plaintiff Crespin's employment status but instead referred this matter to the District Attorney's office in the First Judicial District for criminal prosecution knowing that no evidence existed to support any allegations of theft, embezzlement, or fraud of public monies.

29.     The acts of pursuing criminal indictments and criminal prosecution of the Plaintiff Crespin were done willfully and intentionally by the City of Espanola to disparage Plaintiff's credibility and to destroy his reputation as a New Mexico law enforcement officer.

30.     All the acts of the City of Espanola and of Chief Gonzales, including publication of untruths against Plaintiff Crespin were done intentionally, recklessly, knowingly, and maliciously for the sole purpose of terminating him from employment with the City of Espanola and to destroy Plaintiff Crespin's reputation and credibility in law enforcement.

31.     Additionally, Chief Gonzales, while Chief of Police with the City of Espanola, filed a complaint against Plaintiff Crespin with the New Mexico Law Enforcement Academy seeking to revoke Plaintiff Crespin's law enforcement certification, again raising allegations of theft, embezzlement, or fraud of public monies.  He did this without any facts or basis whatsoever, only to destroy Plaintiff's career as a law enforcement officer.

32.     At all times relevant to herein, Chief Gonzales knew that he had no evidence to support any of these claims as he never personally conducted an investigation or had one conducted, to determine if the allegations had any merit or facts to support them. Chief Gonzales did this as a personal vendetta because two votes of "No Confidence" were issued against him when he was Chief of Police and while Plaintiff Crespin was a union representative. The actions of Chief Gonzales were intentional, willful, malicious, reckless, and without merit.

33.     All of the acts complained of herein by the City of Espanola and Chief Gonzales were done to defame the Plaintiff and to destroy his reputation and career as a law enforcement officer, without regard for the truth.

34. Plaintiff Crespin was denied due process and equal protection under the law by the City of Espanola and Chief Gonzales when they failed to conduct any investigation when they failed to conduct an investigation as required by the Peace Officer's Employer-Employee Relations Act, NMSA 1978, § 29-14-4, 6.  This investigation was necessary to determine whether Plaintiff Crespin committed any of the acts that he was accused of having committed. Further, Plaintiff's termination was excessive, arbitrary, and capricious in that the City failed to follow its progressive discipline policy and the discipline was imposed without just cause.  Evidence can be presented to show that other police officers were overpaid and yet these officers were not disciplined nor were they terminated from employment or subjected to potential criminal prosecution.

35. All of the acts directed at Plaintiff Crespin, including termination and defamation, amount to intentional infliction of emotional distress which Plaintiff has had to endure since the date of his termination.  The City of Espanola and Chief Gonzales made these false allegations intentionally, willfully, recklessly, and without regard for the truth.

36. All of the acts of Chief Gonzales against Plaintiff Crespin, including termination of employment, the charge of criminal wrongdoing, the failure to conduct any investigations, and the filing of a complaint with the New Mexico Law Enforcement Academy, were done willfully, wantonly, recklessly, fraudulently, and in bad faith in Chief Gonzales' efforts to get even with Plaintiff Crespin for the votes of "No Confidence."  For this reason, punitive damages should be awarded to the Plaintiff in an amount sufficient to deter Chief Gonzales from any future conduct such as was directed at Plaintiff Crespin.

37. After indictment by a Rio Arriba County Grand Jury and after completion of discovery in preparation for trial on the criminal charges of fraud, theft, embezzlement

and collusion – the reasons proffered by the City of Espanola and Chief Gonzales in support of Plaintiff's termination – the First Judicial District Attorney's Office filed a Nolle Prosequi on July 21, 2011, indicating that " upon further investigation and review of all of the evidence, including witness statements and discovery of exculpatory evidence, there is not a reasonable likelihood of success at trial to proceed in this matter." (See Plaintiff's Exhibit 1 attached and incorporated herein)

## CAUSE 1

### Violation of the Peace Officer's Employer-Employee Relations Act, NMSA 1978 §29-14-1 through -11.

38. Plaintiff incorporates by reference paragraphs 1 through 37.

39. Plaintiff claims that Defendants are in violation of the Peace Officer's Employer-Employee Relations Act (POEERA).  This purpose of the Act is to prescribe certain rights for peace officers, particularly when they are placed under investigation by their employer. (§29-14-2(B)).

40. As Defendants made no claim that Plaintiff was under a criminal investigation, the Act applies.  (§29-14-2©).

41. The Act dictates that when an officer is under investigation, certain requirements must be met, including that the officer must be informed of the person in charge of the investigation and the officer must be informed of the nature of the investigation.

42. Plaintiff avers that no investigation took place.  Plaintiff was notified by letter that he was presumed guilty of embezzlement.

43. No investigation was held and Plaintiff was not afforded a neutral investigator, but was instead accused and subsequently terminated by Chief Gonzales.

44. Under these circumstances, Plaintiff was never afforded the rights granted him under POERRA. Because of these circumstances, the Notice Of Termination was issued in a capricious and arbitrary manner.

45. Plaintiff respectfully requests this Court to find the Notice of Termination in error and to order such damages as the Court deems appropriate.

## CAUSE II

## DEFAMATION

46. Plaintiff incorporates by reference paragraphs 1 through 45.

47. Plaintiff argues that the charge of fraud, theft and embezzlement made by Defendants was reckless, intentional and without regard for the truth and based on unsupported and credible evidence.

48. Plaintiff argues that the charge of fraud, theft and embezzlement made by Defendants was reckless, intentional and without regard for the truth and based on unsupported and credible evidence.

49. Plaintiff submits that Defendants published this claim in the Rio Grande Sun on July 2, 2009, July 23, 2009, November 25, 2009 and December 3 and December 4, 2009. (See Plaintiff's exhibits 2, 3, 4, and 5 attached and incorporated herein)

50. According to Acting City Manager Veronica Albin, Plaintiff Vince Crespin was put on paid leave in connection with a State Police investigation into alleged embezzlement by city employees.

51. The statement made by Acting City Manager Veronica Albin that Plaintiff Crespin was involved in an embezzlement scheme was false and misleading.

52. By making such a derogatory statement and publishing same, Defendants have defamed Plaintiff.

9

53.     It is logical to assume that the individuals who read the article would believe that Plaintiff was guilty of stealing city funds.

54.     As a result of the allegations made against Plaintiff Crespin, there are people within the Espanola Valley who believe that Plaintiff Crespin is guilty of the allegations made by the Defendants against him, and also believe that he should not be involved in law enforcement and have verbalized this publically.

55.     Defendants knew before they published the offending article that the statements made were false and misleading and were not supported by any credible evidence..

56.     By so publishing, Defendants acted with malice and intent to harm Plaintiff's reputation.

58.     Defendant Julian Gonzales' report to the New Mexico Law Enforcement Academy was made without any supporting credible evidence or based on any investigation and was done,  solely to have Plaintiff Crespin's law enforcement certification suspended or revoked.  Defendant Julian Gonzales' act in filing said complaint with the New Mexico Law Enforcement Academy was done wilfully, reckless and with total disregard for the truth and done solely to hurt Plaintiff Crespin.

59.     After all the publicity created by Defendant City of Espanola, Plaintiff Crespin's reputation was harmed in the law enforcement community as he could not get employment as a law enforcement officer.

60.     Defendants had a duty to publish only true statements and because they did not, Plaintiff has been defamed.

61.     Defendants' acts and omissions were the direct and proximate cause of harm to Plaintiff, including but not limited to lost wages, lost benefits, lost career opportunities, embarrassment, humiliation, emotional distress, and pain and suffering.

62. Plaintiff asks this Court to award appropriate damages.

## CAUSE III

## RETALIATORY DISCHARGE IN VIOLATION OF

## NEW MEXICO PUBLIC POLICY

63. Plaintiff incorporates by reference paragraphs 1 through 62.

64. Plaintiff's employment was terminated in retaliation for his participation in the police union when that body issued two votes of no confidence of Defendant Chief Julian Gonzales, when Vince Crespin was the officer who served as President and Vice President of the union.

65. Defendants' termination of Plaintiff's employment was in violation of the public policy of the State of New Mexico.

66. Defendants acted intentionally and/or with reckless indifference to Plaintiff's rights.

67. Defendants acted willfully, maliciously, wantonly, oppressively, knowingly, in bad faith and with callous and reckless disregard for Plaintiff's rights.

68. Defendants' acts and omissions were the direct and proximate cause of harm to Plaintiff, including but not limited to lost wages, lost benefits, lost career opportunities, embarrassment, humiliation, emotional distress, and pain and suffering.

69. Plaintiff Vince Crespin does not allege any violations of federal law by the Defendants

**WHEREFORE**, Plaintiff Vince Crespin prays this Court for relief in the following particulars:

1. For a judgment in favor of the Plaintiff and against Defendant City of

      Espanola in an amount to be proven at trial.

2. For a judgment in favor of the Plaintiff and against Defendant Julian Gonzales, individually, in an amount to be proven at trial.

3. For an award of punitive damages against Defendant Julian Gonzales in the amount of $300,000.00 for his willful, wanton, reckless, and fraudulent conduct and for bad faith directed against Plaintiff Crespin, to ensure that the type of conduct directed at Plaintiff is not repeated in the future.

4. For the payment of reasonable attorney fees and costs.

5. For such other relief as this Court deems just and proper.

                Respectfully submitted,

                /s/ Rudy Martin

                Rudy Martin
                Attorney for Vince Crespin
                P.O. Box 2668
                Espanola, New Mexico 87532
                (505) 747-3799